IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| OCTAVIUS JOHNSON, DEMETRIUS JOHNSON, JUAQUEZ JOHNSON, SHARON JOHNSON, and SHAREE JOHNSON, individuals, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| vs. | ) ) ) | |
| CITY OF OMAHA, a political subdivision; OMAHA POLICE DEPARTMENT, a Department of the City of Omaha; TODD SCHMADERER, in his capacity of Chief of the Omaha Police Department; AARON P. VON BEHREN, individually and as an officer of the OPD; BRADLEY D. CANTERBURY, individually and as an officer of the OPD; JAMES T. KINSELLA, individually and as an officer of the OPD; JUSTIN A. REEVE, individually and as an officer of the OPD; JOSEPH E. KOENIG, individually and as an Officer of the OPD; JOHN D. PAYNE, Individually and as an officer of the OPD; DYEA L. ROWLAND, individually and as an Officer of the OPD; MATTHEW C. WORM, individually and as an Officer of the OPD; and JOHN and JANE DOES 1 – 24, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )' | COMPLAINT AND DEMAND FOR JURY TRIAL |
| Defendants. | ) ) | |

**PARTIES**

1.  Plaintiffs Octavius Johnson, Demetrius Johnson, Juaquez Johnson, Sharon Johnson, and Sharee Johnson, are individuals residing in Omaha, Douglas County, Nebraska.

2. Defendant City of Omaha (hereinafter the "City") is a political subdivision of the State of Nebraska. The Omaha Police Department (hereinafter "OPD") is a Department of the City.

3. Defendant Todd Schmaderer is the current Chief of the OPD and was Chief of the OPD when the events described herein occurred.

4. Defendants Aaron P. Von Behren, Bradley D. Canterbury, James T. Kinsella, and Justin A. Reeve, are former officers of the OPD. Each of these Defendants were employed by the OPD at the time the events giving rise to this complaint occurred.

5. Defendants Joseph A. Koenig, John D. Payne, Dyea L. Rowland, and Matthew C. Worm are current officers of the OPD and were employed by the OPD at the time the events giving rise to this complaint occurred.

6. Defendants John and Jane Does 1 through 24 are officers and employees of the OPD employed at the time the events giving rise to this complaint occurred who were involved in the events which are the subject of this complaint. As the names of those Defendants are discovered they will be added to the complaint.

## JURISDICTION

7. Jurisdiction over the federal claims stated herein is proper in this court pursuant to 28 U.S.C. § 1331 and for the related state claims pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

## FACTS AND BACKGROUND

8. Plaintiff incorporates all allegations set forth in the preceding paragraphs as if set forth in full herein.

9. On March 21, 2013, officers of the OPD were present at 3321 Seward Street, Omaha, Nebraska because a tow truck driver was attempting to remove certain automobiles from the street allegedly because they were unregistered and had been left on the public street.

10. Octavius Johnson (hereinafter "Octavius"), an African-American male, came to the scene to find out what was occurring with regard to the family vehicles and began a dialogue with the officers on scene.

11. While Octavius was talking to one officer, another officer, Officer Canterbury, approached Octavius from behind, initiated a choke hold and threw Octavius to the ground. After being thrown to the ground Octavius was struck in the head and face several times.

12. Officers on scene called for assistance by using a "help an officer" call and additional law enforcement officers arrived at the scene. The call for assistance was broadcast as a "help an officer" call despite the fact that Octavius had been fully restrained and the only non-officers on the scene were not committing a crime and did not pose a threat to the officers.

13. After Octavius was thrown to the ground, his brother, Juaquez Johnson (hereinafter "Juaquez"), an African-American male, who was filming the incident with a small videocamera, began asking the police why they were hitting his brother and that what he was witnessing was police brutality.

14. As additional officers arrived on the scene, Officer Canterbury continued to hold Octavius to the ground in the street. After checking to see if anyone in the vicinity could observe what he was doing, Officer Canterbury struck Octavius in the head and face despite the fact that Octavius was not resisting or making any effort to free himself.

15. Even though Juaquez was on the sidewalk, as other officers arrived, one officer began approaching Juaquez. Juaquez stated he was not comfortable with the officer approaching

him. As Juaquez attempted to step away from the police officer, the officer began chasing Juaquez and ran after Juaquez into the family home at 2231 Seward Street. Other officers arriving on the scene also ran into the Johnson residence.

16. Demetrius Johnson (hereinafter "Demetrius"), an African-American male, was at all times inside or on the porch of the family home during the incident and was filming the incident involving Octavius with a cell phone.

17. When the police entered the house, Demetrius, who was standing directly behind his aunt, dropped to the floor. Officers jumped on Demetrius and despite his lack of resistance, assaulted him. The officers also forcibly restrained him, placed him in handcuffs, and arrested him.

18. Sharon Johnson (hereinafter "Sharon"), an African-American female and the aunt of Octavius, Juaquez, and Demetrius, has a physical disability and requires a wheelchair to move about. Sharon was inside the house during the incident, talking on the telephone to Sharee Johnson, the boys' mother (hereinafter "Sharee").

19. One of the Police officers who ran into the house placed his hand on the arm of Sharon's wheelchair and tipped it on its side, causing Sharon to be thrown forcibly to the floor. While Sharon was on the floor she was assaulted by officers stepping on her and running into her. No officer stopped to assist Sharon and she was forced to crawl along the floor and use furniture to pull herself up to right her wheelchair and return to it. Sharon was unable to return herself to her chair without assistance.

20. Despite her physical disabilities, police officers inside the house handcuffed Sharon for a period of time.

21. The officer chasing Juaquez into the house caught up with him, threw him to the floor, and began hitting him about the head and shoulders and hitting Juaquez's head against the floor, causing pain, injury, and fear. Juaquez was subsequently handcuffed and arrested.

22. A police officer, on information and belief officer James T. Kinsella, confiscated both the memory card from the telephone Juaquez had been using to record the incident and the video camera used by Demetrius. On information and belief, both the memory card and the video camera were subsequently destroyed. The phone and video camera have not been returned to the Johnsons.

23. The police officers on the scene conducted a complete search of the Johnson residence and found no weapons or illegal drugs. The search was conducted without the consent of any of the Plaintiffs.

24. During the incident more than twenty (20) police officers, including a command officer, responded to the incident at the Johnson's home because the first officers on scene broadcast a "help an officer" call.

25. Octavius, Juaquez, and Demetrius were arrested and transported to jail as a result of this incident.

26. After Octavius, Juaquez, and Demetrius were transported to jail, the family vehicles, including a truck used by one of the brothers to sell scrap metal were towed to police impound. When he was allowed to recover his vehicle, the scrap metal in the truck had been removed. The scrap metal has not been returned and no compensation has been paid for the loss.

27. All charges against Octavius, Juaquez, and Demetrius resulting from this incident were later dropped.

28. Sharon was transported to the hospital after she complained of pain in her neck and shoulders caused by the officers knocking her out of her wheelchair onto the ground and by injuries she suffered from being stepped on or stumbled into by the officers.

29. When the officers ran into the house, the Johnson's two dogs were frightened and ran outside. The police officers subsequently called animal control and had the Johnsons' dogs taken into custody, on information and belief alleging that the dogs were dangerous and aggressive.

30. Sharee had to pay approximately $300.00 to retrieve the family dogs from the Nebraska Humane Society where they were taken at the direction of the OPD.

31. Sharee was on the telephone with her sister Sharon during most of the events that occurred at the Johnson family home. Sharee could hear shouts and commands by the police and feared for the safety of her family. Sharon asked an officer to speak to Sharee on the telephone and the officer refused.

32. After Octavius, Juaquez and Demetrius were transported to the jail and incarcerated the command officer and other officers involved at the scene conspired in an effort to coordinate the stories of the officers on scene to conceal the inappropriate actions of the officers and the destruction of evidence.

33. On information and belief, this conspiracy was discovered and disclosed to other officers of the OPD which then took disciplinary action against the officers involved. The employment of the four police officers identified in paragraph 4 of this Complaint was terminated as a result of this investigation.

34. The officers identified in paragraph 5 of this complaint were also investigated by the OPD for their involvement in the events of March 21, 2013. It is not known if these officers were subject to internal discipline or penalized in some way for their actions.

35. Officer Kinsella was subsequently charged with felony tampering with evidence, obstructing government operations, and theft by unlawful taking.

36. Officer Von Behren was subsequently charged with misdemeanor accessory to a felony and obstructing government operations.

37. Each member of the Johnson family has had to seek counseling as a result of the officers' actions.

## FIRST CAUSE OF ACTION
## ASSAULT and BATTERY

38. Plaintiffs incorporate all allegations set forth in the preceding paragraphs as if set forth in full herein.

39. Officer Canterbury had no valid reason to put Octavius in a choke hold, throw him to the pavement, and strike him in the head and shoulders. Officer Canterbury had no valid reason to resume striking Octavius while other officers on the scene ran into the house.

40. The officer who followed Juaquez into the house had no valid reason to chase Juaquez into the house, throw him to the floor, strike him in the head and slam his head into the floor.

41. The officer(s) who ran into the house had no valid reason to make unwanted physical contact with Sharon, throwing her from her wheelchair and leaving her on the floor without assistance, subjecting her to humiliation and physical injury from which she has experienced pain and suffering.

42. Sharon continues to suffer pain from her injuries and has had to seek counseling for continuing emotional distress.

43. The OPD officers approached Octavius and Juaquez in a threatening manner and caused them to suffer apprehension of imminent physical violence. In addition, the actions of these officers caused Octavius and Juaquez to suffer physical harm and suffer continued fear for their safety.

44. Octavius and Juaquez were injured by the assault and battery upon each of them committed by officers of the OPD.

45. Sharon was injured by the assault and battery upon her committed by officers of the OPD.

## SECOND CAUSE OF ACTION
## FALSE IMPRISONMENT
### (Against all Defendants )

46. Plaintiffs incorporate all allegations set forth in the preceding paragraphs as if set forth in full herein.

47. The officers placed Octavius, Juaquez, and Demetrius in handcuffs, restrained their movements, and transported them to the Douglas County jail where they were incarcerated.

48. The officers had no valid reason to restrain and arrest Octavius, Juaquez, and Demetrius and no probable cause to believe that they had committed any act which would give the officers probable cause to place them under arrest.

49. OPD officers put Sharon in handcuffs while in her home despite Sharon's physical disability and the fact that she could pose no threat to the safety of the officers.

50. The actions of the police in taking Octavius, Juaquez and Demetrius into custody and in placing each of them under arrest without probable cause constitute the civil tort of false imprisonment.

51. The actions of the police in placing Sharon in handcuffs and restraining her movements while inside her home constitute the civil tort of false imprisonment.

### THIRD CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
(Defendants City of Omaha, Omaha Police Department, Police Chief Todd Schmaderer, and all individual defendants)

52. Plaintiffs incorporate all allegations contained in the preceding paragraphs as if set forth in full herein.

53. The City of Omaha is a political subdivision of the State of Nebraska. The Omaha Police Department is a department under the control of the City.

54. Each of the individual defendants were at all times acting under the actual and apparent authority of the City of Omaha and under color of State Law.

55. Defendants, at all relevant times hereto, were acting pursuant to municipal/department custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions and/or inactions.

56. The OPD officers used excessive physical force and initiated arrests without probable cause against Octavius, Juaquez and Demetrius on the basis of their race and/or ethnic origin.

57. The OPD officers, in particular Officer Canturbury, had no legitimate reason to initiate physical contact or restraint of Octavius, Juaquez and Demetrius and, therefore, the use of force was unreasonable per se.

58. The City of Omaha, the Omaha Police Department, Todd Schmaderer and each individual defendant deprived Octavius, Juaquez, and Demetrius of Constitutional rights guaranteed by the United States Constitution by subjecting them to different treatment because of their ethnic origin or race, subjecting them to physical force and false imprisonment and causing them to be arrested despite the lack of probable cause to believe a crime had been committed.

59. The City of Omaha, the Omaha Police Department, Todd Schmaderer and each individual defendant deprived Octavius, Juaquez, Demetrius, Sharon and Sharee of Constitutional rights guaranteed by the United States Constitution by subjecting them to different treatment because of their ethnic origin or race, subjecting them to a warrantless confiscation of personal property, i.e. a telephone memory card and a video recorder, without probable cause.

60. The City of Omaha, the Omaha Police Department, Todd Schmaderer and each individual defendant deprived Sharon of Constitutional rights guaranteed by the United States Constitution by subjecting her to different treatment because of her ethnic origin or race, subjecting her to physical force and false imprisonment and causing her to be physically restrained in her own house despite the lack of probable cause to believe a crime had been committed by her and without a reasonable belief that she was a threat to the well-being of any of the police officers.

61. The City of Omaha, the Omaha Police Department, Todd Schmaderer and each individual defendant deprived Sharee of Constitutional rights guaranteed by the United States Constitution by subjecting her to unreasonable different treatment because of her ethnic origin or race, subjecting her home to an unreasonable search and by seizing and removing two dogs, her property, from the premises without a warrant and without probable cause.

62. It is a well-established Constitutional Right that a person is to be free from unreasonable search and seizure which includes the right to be free from arrest where there is no probable cause.

63. It is a well-established Constitutional Right to be free from discrimination based on race or ethnic origin and that each citizen has the right to equal protection from and application of the law.

64. It is a well-established Constitutional Right that the property of a person may not be seized without a warrant or probable cause.

65. It is a well-established Constitutional Right that the public has a right to observe and film the police performing their duties.

66. The actions of Defendants in going into the Johnson home and confiscating personal property violates the Johnson family's Constitutional right to equal protection of the law and the right to be free of unreasonable search and seizure.

67. Octavius, Juaquez, Demetrius, Sharon, and Sharee were damaged by the deprivation of their civil rights set out above.

68. Defendants City of Omaha and the Omaha Police Department have established a pattern and practice of failing to adequately train officers in de-escalation tactics;

69. Defendants City of Omaha and the Omaha Police Department have established a pattern and practice of allowing their officers to treat citizens differently based on their race and/or ethnic origin.

70. Defendants City of Omaha and the Omaha Police Department have established a pattern and practice of failing to provide adequate oversight for the actions of its officers, creating an atmosphere in which violations of Constitutional Rights are known to occur.

71.     Defendants City of Omaha and the Omaha Police Department have failed to properly train its officers in dealing with citizens who are members of a racial or ethnic minority.

72.     Defendants City of Omaha and the Omaha Police Department have failed to properly train its officers or provide practices and procedures which would prevent officers acting in violation of well-established Constitutional rights.

73.     The actions of Defendants as described herein, while acting under color of state and/or federal law, intentionally deprived Plaintiffs of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the State of Iowa, including the right to freedom from unlawful search and seizure, the right to the equal protection of the laws regardless of race or ethnicity and rights established by the First Amendment to the Constitution.

### FOURTH CAUSE OF ACTION
### VIOLATION OF FIRST AMENDMENT RIGHTS
### (All Defendants)

74.     Plaintiffs incorporate all allegations contained in the preceding paragraphs as if set forth in full herein.

75.     Juaquez Johnson and Demetrius Johnson were each recording the actions of the police officers confronting Octavius Johnson.

76.     Because they were recording the actions of the police officers they were subjected to unwarranted physical force and arrest.

77.     The police officers confiscated and, upon information and belief, destroyed the memory card from a cell phone and a video recording showing the actions of the police officers.

78. The police officers confiscated the recordings and arrested Juaquez and Demetrius Johnson in an effort to prevent disclosure of the recordings of the police actions on March 21, 2013.

79. The right of citizens to observe and film police officers performing their duties is protected by the First Amendment to the United States Constitution.

80. The right of citizens to observe and film the actions of police officers performing their duties is a well-established right which should have been known to the police officers.

81. Defendants City of Omaha and the Omaha Police Department have failed to properly train their officers regarding the First Amendment right of citizens to observe and record the actions of police officers performing their duties.

82. Juaquez and Demetrius were damaged by the actions of the police officers which deprived them of their First Amendment rights.

## FIFTH CAUSE OF ACTION
## CIVIL CONSPIRACY
### (All Defendants)

83. Plaintiffs incorporate all allegations contained in the preceding paragraphs as if set forth in full herein.

84. After the events which occurred on March 21, 2013, defendants conspired in an effort to coordinate stories which would conceal the inappropriate actions of the police officers and conceal the fact that evidence was destroyed.

85. The conspiracy was in furtherance of a wrongful act, to-wit: concealing the crimes of theft and destruction of evidence.

86.     The conspiracy was in furtherance of violations of Constitutional rights including the right to be free from unreasonable searches and seizures and the right of free speech conferred by the First Amendment.

87.     The conspiracy was in furtherance of violations of the Constitutional requirement that all citizens are entitled to equal protection under the law.

## DEMAND FOR JURY TRIAL

88.     Plaintiffs hereby demand trial by jury on each cause of action stated above.

WHEREFORE, Plaintiffs respectfully request this Court award damages as follows:

1. Monetary damages in payment for Sharon's medical bills, physical pain and suffering, and emotional distress incurred as a result of the actions of the defendants herein;

2. Monetary damages in payment for the medical bills incurred by Octavius and Juaquez who were taken to the hospital emergency room and monetary damages for their pain and suffering;

3. Monetary damages in payment for the humiliation, embarrassment and mental anguish suffered by Sharon in being thrown from her wheelchair and left helpless on the floor;

4. Monetary damages in payment for the goods and property which were lost or damaged as a result of the actions of defendants herein;

5. Monetary damages in payment for the humiliation, embarrassment and mental anguish suffered by Octavius, Juaquez, and Demetrius when they were arrested without probable cause;

6. Monetary damages to reimburse Sharee for the payment to the Nebraska Humane Society which was required to have her dogs returned to her and monetary damages for the fear and emotional suffering caused by her apprehension for the safety of her family while listening to the incident;

7. Monetary damages to reimburse Octavius, Juaquez and Demetrius for any time lost from work as a result of their unlawful arrest;

8. Monetary damages to compensate Juaquez and Demetrius for deprivation of their First Amendment rights.

9. Punitive damages against defendants Von Behren, Kinsella, Canterbury, and Reeve in their individual capacities for violating Plaintiffs' civil rights intentionally or in reckless disregard of well-established Constitutional rights.

10. Such other and further relief as may be appropriate under the circumstances, including, but not limited to a mandatory injunction requiring all officers of the Omaha Police Department to undergo training in de-escalation techniques and the First Amendment rights of citizens to observe the actions of police officers performing their official duties in a public place;

11. Costs and attorneys fees for this action as allowed by law.

Dated this ____ day of January, 2014.

                            OCTAVIUS JOHNSON, JUAQUEZ
                            JOHNSON, DEMETRIUS JOHNSON,
                            SHARON JOHNSON and SHAREE JOHNSON

                  By:     /s/ Diana J. Vogt
                         Diana J. Vogt, NE Bar #19387
                         SHERRETS BRUNO & VOGT LLC
                         260 Regency Parkway Drive, Suite 200
                         Omaha, NE 68114
                         (402) 390-1112 phone

(402) 390-1163 (fax)
dvogt@sherrets.com

AMERICAN CIVIL LIBERTIES UNION
  COOPERATING ATTORNEY

    and

Amy Miller, NE Bar #21050
ACLU Nebraska Foundation, Inc.
941 O Street, #706
Lincoln, NE  68508
(402) 476-8091 (phone)
(402) 476-8135 (fax)
amiller@aclunebraska.org